# 24-

## United States Court of Appeals
### *for the*
## Second Circuit

———————◆———————

HUGH BIRTHWRIGHT,

*Plaintiff-Respondent,*

— v. —

ADVANCE STORES COMPANY, INC., d/b/a Advance Auto Parts,

*Defendant-Petitioner.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## PETITION FOR PERMISSION TO APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1292(b) AND FRAP 5(a)(3)

JEFFREY W. BRECHER
ELYSE PATTERSON
JACKSON LEWIS P.C.
*Attorneys for Defendant-Petitioner*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

## CORPORATE DISCLOSURE STATEMENT

Defendant-Petitioner Advance Stores Company, Incorporated, d/b/a Advance Auto Parts, certifies that it is a non-governmental corporate party. Defendant-Petitioner's parent company is Advance Auto Parts, Inc., which is a publicly held corporation that owns 10% or more of Defendant-Petitioner's stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

PRELIMINARY STATEMENT ......................................................................1

QUESTION PRESENTED ...............................................................................4

RELIEF SOUGHT ...........................................................................................4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY....................5

ARGUMENT ...................................................................................................9

I.    Standard For Granting Interlocutory Review under 28 U.S.C. §1292(b)................................................................................................9

II.   The June 27, 2024 Order Involves a Controlling Question of Law: Does the NYLL Authorize a Private Right of Action for Errors in the Frequency in Which Payroll is Processed under NYLL §191 (*i.e.*, paying employees biweekly instead of weekly) or Only Public Enforcement by the NYSDOL? ...........................................................10

III.  There is a Substantial Ground for Difference of Opinion ......................12

    A. State Appellate Courts and Federal District Courts Disagree Whether a Private Right of Action is Permitted ....................................................12

    B. The New York Court of Appeals is More Likely to Adopt the Second Department's Holding in *Grant*, Than the First Department's Holding in *Vega*....................................................................................16

IV.  An Immediate Appeal from the Order Will Materially Advance the Ultimate Termination of This Litigation (and Many Others) .................20

V.   Additional Grounds Exist Warranting This Court's Exercise of Its Discretion: The Order Involves a Novel Question of Law Where Plaintiffs are Seeking Exponential Damages and, Thus, the Appeal Involves an Issue of Statewide Importance............................................22

    CONCLUSION .......................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 650 Fifth Ave. & Related Props.*,
  2012 U.S. Dist. LEXIS 14973 (S.D.N.Y. Feb. 2, 2012) ...................... 20

*Balintulo v. Daimler AG*,
  727 F.3d 174 (2d Cir. 2013) ................................................. 10

*Bazinett v. Pregis LLC*,
  No. 23-CV-00790, ECF. No. 44 (N.D.N.Y. Mar. 25, 2024)................. 15

*Birthwright v. Advance Stores Co.*,
  2023 U.S. Dist. LEXIS 156585 (E.D.N.Y. Sep. 5, 2023) ...................... 6

*Bryant v. Buffalo Exch., Ltd.*,
  No. 23-CV-08286, ECF. No. 30 (S.D.N.Y. Feb 20,
  2024) ...................................................................... 22

*Cal. Pub. Emps. Ret. Sys. v. Worldcom, Inc.*,
  368 F.3d 86 (2d Cir. 2004) ................................................. 21

*Campbell v. Zerocater, Inc.*,
  No. 23-CV-05742, ECF No. 29 (S.D.N.Y. June 6, 2024).................... 22

*Carter v. Frito-Lay, Inc.*,
  74 A.D.2d 550 (1st Dep't 1980)............................................. 6

*Casey v. Long Is. R.R.*,
  406 F.3d 142 (2d Cir. 2005) ................................................ 10

*Charles v. United States of Artizia Inc.*,
  No. 23-CV-09389, ECF No. 15 (S.D.N.Y. Feb. 1, 2024) .................... 22

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ........................................................ 24

*Confusione v. Autozoners, LLC*,
  No. 21-CV-00001, ECF No. 64 (E.D.N.Y. July 3, 2024) .................... 22

iii

*Covington v. Childtime Childcare, Inc.*,
   No. 23-CV-00710, ECF. No. 30 (N.D.N.Y. June 20, 2024) ........... 15, 16

*Enron Corp. v. Springfield Assoc., L.L.C.*,
   2007 U.S. Dist. LEXIS 70731 (S.D.N.Y. Sept. 24, 2007) ................... 12

*Espinal v. Sephora USA, Inc.*,
   2024 U.S. Dist. LEXIS 135372
   (S.D.N.Y. July 31, 2024) .................................. 14, 15, 16, 17, 18, 19, 20

*Galante v. Watermark Servs., IV LLC*,
   2024 U.S. Dist. LEXIS 40337 (W.D.N.Y. Mar. 7, 2024) ............... 14, 18

*Gelboim v. Bank of Am. Corp.*,
   574 U.S. 405 (2015) ................................................................................. 9

*Georgiou v. Harmon Stores, Inc.*,
   2022 U.S. Dist. LEXIS 234643 (E.D.N.Y. Dec. 29, 2022)............. 13, 19

*Gottlieb v. Kenneth D. Laub & Co.,*
   82 N.Y.S.2d 457 *(1993)* .................................................................. 17, 18

*Glatt v. Fox Searchlight Pictures, Inc.*,
   2013 U.S. Dist. LEXIS 139594 (S.D.N.Y. Sept. 17, 2013) ................. 21

*Grant v. Glob. Aircraft Dispatch, Inc.*,
   223 A.D.3d 712 (2d Dep't 2024).................................................... *passim*

*Hunter v. Debmar-Mercury, LLC*,
   2024 U.S. Dist. LEXIS 2943 (S.D.N.Y. Jan. 5, 2024) .......................... 20

*Hunter v. Planned Bldg. Servs., Inc.*,
   2018 N.Y. Misc. LEXIS 2896 (N.Y. Sup. Ct. June 11,
   2018) .................................................................................................... 14

*Hussain v. Pak. Int'l Airlines Corp.*,
   2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012) ................... 14

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990) ........................................................... 11, 21

iv

*Koehler v. Bank of Berm. Ltd.*,
    101 F.3d 863 (2d Cir. 1996) .................................................................. 9

*Konkur v. Utica Acad. of Sci. Charter Shc.*,
    38 N.Y.3d 38 (2022) ...................................................................... 19, 20

*Levy v. Endeavor Air Inc.*,
    2024 U.S. Dist. LEXIS 60332 (E.D.N.Y. Mar. 25, 2024) ................... 15

*Mendoza v. Cornell Univ.*,
    215 A.D.3d 590, 591 (1st Dep't 2023) ......................................... 17, 18

*Michalski v. Home Depot., Inc.*,
    225 F.3d 113 (2d Cir. 2000) ................................................................ 13

*Mohawk Indus., Inc., v. Carpenter*,
    558 U.S. 100 (2009) ...................................................................... 10, 22

*New York v. Arm or Ally, LLC*,
    2024 U.S. Dist. LEXIS 90114 (S.D.N.Y. May 20, 2024) .................... 11

*Ramos v. Apple Inc.*,
    2023 U.S. Dist. LEXIS 158183 (S.D.N.Y. Sept. 6, 2023) ............. 10, 11

*Estate of Re by Re v. Kornstein, Veisz & Wexler*,
    1998 U.S. App. LEXIS 18632 (2d Cir. Aug. 6, 1998) ................... 12, 13

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ............................................................................. 6

*Vega v. CM & Assoc. Constr. Mgmt., LLC*,
    175 A.D.3d 1144 (1st Dep't 2019) ............................................. *passim*

*Vengalattore v. Cornell Univ.*,
    36 F.4th 87 (2d Cir. 2022) .................................................................. 10

*Yu v. Hasaki Rest., Inc.*,
    874 F.3d 94 (2d Cir. 2017) ........................................................... 10, 12

*Zachary v. BG Retail, LLC*,
    No. 22-CV-10521 (S.D.N.Y Mar. 13, 2024) ...................................... 15

**Rules**

Fed. R. App. P. 5(a)(3)...................................................................... 8

Fed. R. Civ. P. 12(b)(6) ................................................................... 6

Fed. R. Civ. P. 23 ............................................................................ 5

N.Y. C.P.L.R. §901(b) ..................................................................... 6

**Statutes**

28 U.S.C. §1292(b) ................................................................. *passim*

28 U.S.C. §1332(d) ..................................................................... 5, 6

NYLL §190.................................................................................... 22

NYLL §191.............................................................................. *passim*

NYLL §198.............................................................................. 17, 18

Weekly Payment Act, L. 1890, Ch. 388 §1 ................................. 16

**Other Authorities**

19 James W. Moore et al., Moore's Federal Practice - Civil
    §203.31 (3d ed. 2024)............................................................ 11

*FY 2025 New York State Executive Budget*, Education, Labor
    and Family Assistance Article VII Legislation
    Memorandum in Support 15,
    https://www.budget.ny.gov/pubs/archive/fy25/ex/artvii/elfa
    -memo.pdf (last visited Aug. 5, 2024).................................... 23

S. 09811, Gen. Assemb. (N.Y. May 31, 2024).......................... 23

Allen A. Shoikhetbrod & Jared Cook, *New York Court Ruling
    Holds No Private Right of Action for Pay Frequency
    Claims*, N.Y.L.J., Feb. 23, 2024 ........................................... 23

Evan M. Piercey & Michael S. Arnold, *New York Court Puts
    Breaks on Manual Worker Weekly Wage Payment Claims,*

Nat'l L. Rev., Jan. 23, 2024 .................................................... 23

Keshia Clukey, *Century-old New York State Weekly Pay Law
    Sparking Contentious Legal Battle*, Newsday, June 23,
    2024 .................................................................. 3, 21, 23, 24

Nicole Gelinas, *Lunatic Pay Law Threatens NY Biz*, N.Y.
    Post, Mar. 20, 2023 ........................................................ 23

This is a Petition for interlocutory review under 28 U.S.C. §1292(b) brought by Defendant-Petitioner Advance Stores Company, Incorporated ("Defendant").

## PRELIMINARY STATEMENT

The question presented here is a purely legal one: Whether there is a private right of action under New York Labor Law ("NYLL") §191 for errors in the frequency in which payroll is processed (*e.g.,* processing payroll biweekly instead of weekly), or whether the New York Legislature only provided for public enforcement by the New York State Department of Labor.

Plaintiff does not allege that he, and the class he seeks to represent, did not receive all their wages. They did. Rather, he alleges, that because the wages were paid biweekly instead of weekly, he and the class he seeks to represent, are entitled to be paid twice—his original pay plus 100% of the wages that were allegedly paid late in "liquidated damages" under the NYLL.

A quick example demonstrates the potential impact of the claim:

Suppose an employer with 25 employees, all earning $20.00 per hour and working 40 hours per week ($800), were paid all their wages but were paid $1,600 biweekly instead of $800 weekly. According to Plaintiff, one week was paid "late," so each employee is entitled to $800 in liquidated damages per

pay period. The damages during the limitations period (6 years under the NYLL) are $124,800 for *one* employee and $3.12M for 25 employees.

That example applies to a small employer. A mid-size employer with 1,000 employees would owe business-ending damages of $124M. And a single large employer with 10,000 employes would owe exponential damages of $1.248B. Damages in combined lawsuits against thousands of New York employers would reach hundreds of billions of dollars. The Legislature never intended such draconian penalties for employers who paid employees all their wages, but who simply did so biweekly (the most common payroll cycle in the country) instead of weekly. Indeed, imposing such damages would subject these employers to the same penalties as an employer who did not pay its employees at all.

The New York State appellate courts are split. In 2019, the First Department held in *Vega*,[1] a seven-paragraph decision with little analysis, that there *is* a private right of action. *Vega* was the first appellate court to recognize a private right of action since the statute was enacted in 1890. But in 2024, the Second Department held in *Grant*,[2] a lengthy decision

---

[1] *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019).

[2] *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2d Dep't 2024).

2

thoroughly reviewing the statutory and legislative history, that there is *no* private right of action and rejected the *Vega* decision.

Federal district courts are also in conflict. Resolution by this Court is, thus, warranted, not only because of the conflict, but because the issue is one of statewide importance, affecting thousands of employers and employees across New York. *See* Keshia Clukey, *Century-old New York State Weekly Pay Law Sparking Contentious Legal Battle*, Newsday, June 23, 2024 (noting more than 400 lawsuits have been filed following *Vega* seeking to cash-in on the decision, forcing employers to settle claims to avoid potentially catastrophic damages).

Interlocutory review will also conserve judicial resources and provide clarity regarding the law on a case-determinative issue in this case, many other pending cases, and future cases yet to be filed. It is an issue of first impression for this Court and the New York Court of Appeals ("NYCOA").[3]

---

[3]A motion for leave to appeal to the NYCOA is pending before the Appellate Division, Second Department in *Grant*. Should the NYCOA agree to hear the case, this appeal may be stayed pending decision from the NYCOA. But if *Grant* is resolved, or the NYCOA does not accept the case, this Court's decision will be binding on all Second Circuit district courts, potentially resolving hundreds of cases. This Court could also certify the question presented here to the NYCOA, an option not available to district courts.

## QUESTION PRESENTED

1.     If employers pay employees all the wages they earn, but process payroll using the wrong frequency (*e.g.*, paying biweekly instead of weekly), does the NYLL provide a private right of action, allowing employees to retain the full wages they were already paid and also recover an equal amount in liquidated damages for any alleged late payments (*i.e.*, receive double pay)?

## RELIEF SOUGHT

Defendant requests permission to immediately appeal the district court's June 27, 2024 Order ("the Order") denying its motion for judgment on the pleadings. Appx. 8-11. If the Petition is granted, Defendant will seek reversal of the Order or, in the alternative, certification by this Court of the question presented to the NYCOA.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's First Amended Complaint ("FAC") alleges a single cause of action: violation of NYLL §191, which requires "manual workers" to be paid weekly. ECF No. 10 ¶¶ 3; 41-42.[4] The seven-page FAC contains only a few facts: it alleges Plaintiff worked for Defendant as a delivery driver; that he was employed for three weeks; and that he was responsible for driving, loading/unloading automotive parts, lifting and stocking merchandise, and general cleaning of the store. *Id.* ¶¶ 9; 31. Plaintiff does not allege he was paid *less than* the wages he was owed for his three weeks of employment. Rather, he alleges only that he was paid his wages biweekly instead of weekly. *Id.* ¶¶ 2-3.

The FAC is brought as a putative "class action" under Fed. R. Civ. P. 23 on behalf of "all persons who work or have worked as Hourly Workers" during the statutory period. *Id.* ¶ 20.

Jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), which permits federal courts to exercise jurisdiction over state law claims where, among other things, the amount in controversy

---

[4] References to "ECF" refer to electronic filings in the district court, Case No. 22-CV-00593, available on PACER.

exceeds $5M, and the number of putative class members is over 100. *Id*. ¶¶ 16-17.[5] Plaintiff alleged in the FAC that both requirements were met.

Defendant moved to dismiss the FAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 19. The court denied the motion, deferring to *Vega*, in the absence of any other state appellate decision at that time. *Birthwright v. Advance Stores Co.*, 2023 U.S. Dist. LEXIS 156585 (E.D.N.Y. Sep. 5, 2023). On January 17, 2024, the Second Department decided *Grant*, expressly rejecting *Vega*. Relying on *Grant*, Defendant filed a motion for judgment on the pleadings and reconsideration, seeking dismissal of the FAC. ECF No. 61.

The district court denied Defendant's motion on June 27, 2024, but acknowledged the "split among the Appellate Divisions" and the "lack of

---

[5] New York law does not permit class actions in state court seeking penalties like the liquidated damages sought here. N.Y. C.P.L.R. §901(b) (McKinney 2024); *Carter v. Frito-Lay, Inc*., 74 A.D.2d 550, 551 (1st Dep't 1980). Thus, although New York courts have held litigants seeking liquidated damages cannot proceed on a class basis, and such litigants can only proceed individually, because that is a "procedural rule" it has been held not to apply in federal court. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010). Thus, these cases are routinely filed in federal court, not state court, to specifically *avoid* the New York State prohibition on class actions seeking penalties. Federal courts are thus, ironically, presiding over state law class claims seeking penalties, even though the New York legislature has expressly provided such claims cannot proceed as class claims. This is another reason interlocutory appeal is appropriate.

clear guidance from the Court of Appeals." Appx. 8-11. The court noted it was unable to directly certify the question to the NYCOA, but "[c]onsidering the sweeping ramifications of the issue presented herein—and judicial efficiency, consistency, and comity," the exclusion of district courts from that certification mechanism, it noted, was "ill-advised." Appx. 10, n. 1.

Defendant promptly asked the court to certify the issue for an interlocutory appeal under 28 U.S.C. §1292(b). ECF No. 67. The court granted the motion in an Order dated July 24, 2024, finding all the requirements of Section §1292(b) satisfied. Appx. 12-13. The court held "[t]here can be no dispute" that the Order involved a controlling question of law, and resolving it would materially advance the action. *Id*. The court also held there was "substantial ground for difference of opinion," citing the split of authority among the Appellate Divisions and the "conflicting views of the district courts." Appx. 13. The court also stated there would be "significant societal interest" in granting certification because resolution of the unsettled question of law has "significant implications for employers and employees across the state." *Id*.

This Petition is timely, having been filed within ten days of the certification Order issued by the district court. 28 U.S.C. §1292(b); Fed. R. App. P. 5(a)(3).

## ARGUMENT

### I. Standard for Granting Interlocutory Review under 28 U.S.C. §1292(b)

28 U.S.C. §1292(b) permits appellate jurisdiction over interlocutory civil orders "[w]hen a district judge . . . [is] of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b).

There are two steps for this certification process: first, the district court must certify these requirements have been met in a written order; second, upon entry of such an order certifying the case for interlocutory appeal, a circuit court may accept or decline jurisdiction. *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996); *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 416 (2015).

In deciding whether to grant a petition for interlocutory appeal (step two) a circuit court considers, but is not limited to, the same statutory criteria the district court applies in granting leave to appeal, whether: (1) the order involves a "controlling question of law"; (2) the controlling question of law is one where there is a "substantial ground for difference of

opinion"; and (3) an immediate appeal from the order "may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b); *Yu v. Hasaki Rest., Inc*., 874 F.3d 94, 96 (2d Cir. 2017); *Casey v. Long Is. R.R.*, 406 F.3d 142, 146 (2d Cir. 2005). And "[w]hen a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal'" so the circuit court can answer the question. *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d. Cir. 2014) (quoting *Mohawk Indus., Inc., v. Carpenter*, 558 U.S. 100, 111 (2009)).

## II. The June 27, 2024 Order Involves a Controlling Question of Law: Does the NYLL Authorize a Private Right of Action for Errors in the Frequency in Which Payroll is Processed Under NYLL §191 (*i.e.*, paying employees biweekly instead of weekly) or Only Public Enforcement by the NYSDOL?

The requirement under 28 U.S.C. §1292(b) that an Order involve a "controlling question of law" has two components—(a) the issue must be one of *law*; and (b) the question of law must be "controlling."

"A decision that a statute does [or does not] authorize a private right of action is of course a purely legal ruling." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 101 (2d Cir. 2022). It is not a question of fact or a mixed question of law and fact. It requires no factual determination or development of a factual record; only a judicial determination based on an

10

analysis of the statutory language and statutory and legislative history. *See Ramos v. Apple Inc.*, 2023 U.S. Dist. LEXIS 158183, at *3 (S.D.N.Y. Sept. 6, 2023) (noting whether NYLL §191 provides for a private right of action is a "pure issue of law").

Interlocutory review under the circumstances present here is, therefore, particularly appropriate, because the Court can decide the issue "quickly and cleanly without having to study the record." *New York v. Arm or Ally, LLC*, 2024 U.S. Dist. LEXIS 90114, at *4 (S.D.N.Y. May 20, 2024). Indeed, here there is no factual record to review; the Order involves a denial of Defendant's motion for judgment on the pleadings based only on the facts alleged in the FAC (which are accepted as true). And as noted above, there are only a handful of facts in the FAC to even consider.

"A question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (internal citations omitted). Controlling questions of law include, therefore, "the question of whether a claim exists as a matter of law." 19 James W. Moore et al., Moore's Federal Practice - Civil §203.31 (3d ed. 2024) (citing various Second Circuit decisions granting §1292(b) petitions). The Order here involves a "controlling" issue of law, because a reversal of the Order would terminate this action: If there

is no private right of action, the case will be dismissed with prejudice, not subject to amendment to cure any defect.

The first requirement, as the district court found, is easily satisfied.

## III.   There is a Substantial Ground for Difference of Opinion

A "substantial ground for difference of opinion" may be met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Enron Corp. v. Springfield Assoc., L.L.C.*, 2007 U.S. Dist. LEXIS 70731, at *6 (S.D.N.Y. Sept. 24, 2007). Here, both conditions are met.

### A.   State Appellate Courts and Federal District Courts Disagree Whether a Private Right of Action is Permitted

There is conflicting authority on the legal question presented, both at the state appellate level and among the federal district courts. It is thus, the trifecta of conflicting authority—conflict *between* state appellate courts (First Department and Second Department); conflict *between* state appellate courts and federal courts; and conflict *among* the federal district courts. Thus, there can be no doubt that there is substantial ground for difference of opinion. *See Yu*, 874 F.3d at 96 (finding "substantial ground for difference of opinion" where federal district courts in the circuit were in conflict regarding a question of law); *Estate of Re by Re v. Kornstein, Veisz & Wexler*, 1998 U.S. App. LEXIS 18632 (2d Cir. Aug. 6, 1998) (granting

12

interlocutory appeal where New York state trial courts were in conflict regarding a controlling legal issue).

In opposition to Defendant's motion for interlocutory appeal to the district court, Plaintiff argued a substantial ground for difference of opinion does not exist because the majority of district courts post-*Grant* have followed *Vega*.[6] But that argument ignores the direct conflict between the First Department and Second Department, as the district court judge in this case recognized. *See* Appx. 13. (("[T]his Court cannot (and has not) ignored the 'split among the Appellate Divisions' as well as the conflicting views of the district courts.")). It also ignores the conflict among the district courts. After the Second Department decided *Grant*, for example, two district court judges who had previously deferred to *Vega* and *denied* the defendants' motions to dismiss changed course, after considering the reasoning in *Grant*, and then *granted* the same motions to dismiss, predicting the New York Court of Appeals will follow *Grant*, not *Vega*.

---

[6] The pre-*Grant* district court decisions following *Vega* are of marginal relevance on this point because before *Grant* federal district courts were required to follow *Vega* as the only state appellate court decision directly addressing the issue, absent persuasive evidence the New York Court of Appeals would rule differently. *Michalski v. Home Depot., Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). Some district court judges who followed *Vega* (pre-*Grant*) did so grudgingly, and only because they were bound to follow the highest state appellate authority. *See Georgiou v. Harmon Stores, Inc.*, 2022 U.S. Dist. LEXIS 234643, at *12-13 (E.D.N.Y. Dec. 29, 2022).

*Espinal v. Sephora USA, Inc.*, 2024 U.S. Dist. LEXIS 135372, at *29 (S.D.N.Y. July 31, 2024) (*report and recommendation*) ("*Espinal II*"); *Galante v. Watermark Servs., IV LLC*, 2024 U.S. Dist. LEXIS 40337, at *17 (W.D.N.Y. Mar. 7, 2024).

In *Espinal II*,[7] decided just days ago, the court fully dismantled the reasoning in *Vega* and granted a motion to dismiss. The court also noted that if *Vega* were adopted, the damages would exceed "by astronomical proportions the actual harm to the plaintiffs," explaining the *actual* harm is the lost interest on any late paid wages for one week, and awarding liquidated damages equal to 100% of the late paid interest, would result in damages "on the order of 57,800% of the loss," a result it described as "absurd" and not one the Legislature would have intended. *Espinal II*, 2024 U.S. Dist. LEXIS 135372, at *11-13.

Notably, prior to *Vega*, federal district courts and state courts also held there is no private right of action for violations of pay frequency provisions of the New York Labor Law. *See, e.g.*, *Hunter v. Planned Bldg. Servs., Inc*., 2018 N.Y. Misc. LEXIS 2896, at *4 (N.Y. Sup. Ct. June 11, 2018); *Hussain v. Pak. Int'l Airlines Corp.*, 2012 U.S. Dist. LEXIS 152254

---

[7] As of the filing of this Petition (August 5, 2024), the period of time to file objections to the R&R (decided July 31, 2024) has not yet expired.

(E.D.N.Y. Oct. 23, 2012). It was only *Vega* that upset the well-settled law, which the Second Department quickly rejected in *Grant*.

In opposition to the request to certify, Plaintiff also relied on two district court decisions that denied motions for interlocutory appeal regarding the question presented here.[8] Respectfully, the conclusion that no substantial ground for difference of opinion exists is unsupported, given the split between two New York State Appellate Divisions on a state law issue (one issued in 2019 and the other in 2024) and the conflict among the district courts. And that conflict has now grown even larger since those decisions. *See Espinal II*, 2024 U.S. Dist. LEXIS 135372, at *11-13 (decided after *Zachary* and *Levy*). That district judges even disagree regarding *whether* to certify the issue for interlocutory appeal only buttresses the need for further appellate review.

Finally, motions to certify the same question presented to this Court are pending at the district court in at least *two other* cases where a motion to dismiss was denied on the same issue here. *See Bazinett v. Pregis LLC*, No. 23-CV-00790, ECF. No. 44 (N.D.N.Y. filed Mar. 25, 2024); *Covington*

---

[8] *Zachary v. BG Retail, LLC*, No. 22-CV-10521 (S.D.N.Y Mar. 13, 2024); *Levy v. Endeavor Air Inc.*, 2024 U.S. Dist. LEXIS 60332 (E.D.N.Y. Mar. 25, 2024).

*v. Childtime Childcare, Inc.,* No. 23-CV-00710, ECF. No. 30 (N.D.N.Y. filed June 20, 2024). The post-*Grant* filing of *five* motions for interlocutory appeal itself demonstrates the need for further appellate review.

**B.** **The New York Court of Appeals is More Likely to Adopt the Second Department's Holding in *Grant*, than the First Department's Holding in *Vega***

The First Department's analysis of the weekly payment law in *Vega* was flawed; the Second Department was correct in rejecting it.

In 1890, the New York Legislature enacted the "Weekly Payment Act," now codified as NYLL §191, requiring employers to pay certain employees on a "weekly basis." L. 1890, ch. 388, §1. Section Two of the law provided the sole remedy for its violation: a penalty of between $10-50, to be paid to the State and recovered in a civil action brought by the "factory inspectors" (predecessor to the Commissioner of Labor). *Id*. It did not provide for a private right of action, and no amendment to the law has since provided for a private right of action. Not surprisingly then, for the next 120 years no private civil lawsuits were brought for any violation, or in the very few cases where a claim was filed, the court quickly dismissed it, finding the statute does not provide for a private right of action.

This well-understood legal landscape was dramatically unsettled, however, in 2019, when the First Department recognized (for the first time)

a private right of action for violations of the law in *Vega*, and with it "liquidated damages" in an amount equal to the amount that was allegedly paid late. *See Espinal II*, 2024 U.S. Dist. LEXIS 135372, at *4 (noting prior to *Vega* courts held no private right of action existed under NYLL §191 and that the "legal landscape changed" after *Vega*).

*Vega* did not cite to any statutory language in NYLL §191 to support its finding. Instead, the court cited a different section of the NYLL, Section 198, which the court found provided for an "express" private right of action. Originally enacted as the "Model Wage Bill" in 1937, NYLL §198, was passed almost 50 years after the Weekly Payment Act. NYLL §198 was passed to provide a statutory claim for unpaid wages (*i.e.*, employers who failed to pay employees or paid them less than what they were owed). It had nothing to do with the Weekly Payment Act, which regulated payroll frequency. *Vega* incorrectly linked the two laws, and then further engaged in a strained statutory interpretation of NYLL §198 in holding an express private right of action exists. *Vega* cited *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.S.2d 457 (1993), but *Gottlieb* was superseded by various amendments to the Labor Law, as many courts have recognized, including the First Department itself in *Mendoza v. Cornell Univ.*, 215 A.D.3d 590, 591 (1st Dep't 2023) (noting that an amendment to the Labor Law

17

"abrogated *Gottlieb*"); *Galante*, 2024 U.S. Dist. LEXIS 40337, at *28 (noting *Gottlieb* has been abrogated, citing *Mendoza*). The First Department's later acknowledgment that *Gottlieb* (which *Vega* relied upon) is no longer good law, seriously undermines *Vega*'s reasoning and further makes it unlikely the Court of Appeals would follow it.

*Vega*'s statutory analysis rested almost entirely on a dictionary definition of the word "underpayment," contained in Section 198, a word added in 2009, again having nothing to do with pay frequency. *Vega* reasoned "underpayment" means "to pay less than what is normal or required" and "the moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Vega*, at 1145. But *Vega* applied that definition as if the dictionary had said, instead, "to pay *later* than *when* is required." As Judge Geraci concluded in *Galante*, "the Second Department's contrary reading [is] more persuasive," because the "usual and commonly understood meaning of 'less than' and 'underpayment' refer to situations in which an employee has not received the amount of wages she is entitled, rather than situations when she has received them one week late." *Galante*, 2024 U.S. Dist. LEXIS 40337, at *24 (internal citations omitted) (cleaned up). The court in *Espinal II* also found *Grant*'s analysis of the statutory language

18

more persuasive considering the statutory and legislative history, historic enforcement by the NYSDOL, and common sense. *See Espinal II*, 2024 U.S. Dist. LEXIS 135372.

Notably, because the First Department's statutory analysis finding an "express" private right of action was shaky, it hedged its bet and held that even if an express private right of action does not exist, the court could find one by implication—the so-called "implied private right of action." The theory is that even if the Legislature did not expressly provide any statutory language permitting a private right of action, a court can create one, because that was the Legislature's unexpressed intent. But in *Konkur v. Utica Acad. of Sci. Charter Shc.*, 38 N.Y.3d 38 (2022), decided *after Vega*, the NYCOA held a private right of action *cannot* be implied under Article 6 of the NYLL (which contains §191), because doing so is inconsistent with the legislative scheme. The court reasoned that where the Legislature has already provided an enforcement mechanism (as it did in Article 6) recognizing a *new* and *additional* enforcement mechanism flouts legislative intent. *Konkur*, 38 N.Y.3d 38. *Konkur*, thus, abrogated *Vega*'s alternative holding that an "implied" private right of action exists. *Grant* relied heavily on *Konkur* in rejecting *Vega*'s alternative holding that there is an implied right of action. *See also Georgiou*, 2022 U.S. Dist. LEXIS 234643, at *10

19

(finding "no trouble" concluding that *Konkur* abrogated *Vega*'s determination that an implied right of action exists); *Espinal II*, 2024 U.S. Dist. LEXIS 135372 *28-29 (agreeing with *Grant* and rejecting *Vega's* finding of an implied private right of action).

*Vega* was not well-reasoned and is unlikely to be adopted by the NYCOA.

## IV. An Immediate Appeal from the Order Will Materially Advance the Ultimate Termination of This Litigation (and Many Others)

"There can be no dispute" that the third requirement for an interlocutory appeal (an immediate appeal will materially advance the ultimate termination of the litigation) is "satisfied." Appx. 12. This requirement is, of course, "closely connected" to the first factor (controlling question of law) because where, as here, there is a pure question of law that will result in dismissal of the action if the order is reversed, an immediate appeal from that order will necessarily "materially advance the termination of the litigation." *In re 650 Fifth Ave. & Related Props.*, 2012 U.S. Dist. LEXIS 14973, at *10-11 (S.D.N.Y. Feb. 2, 2012).

In evaluating this factor, courts consider the "institutional efficiency of both the district court and the appellate court." *Hunter v. Debmar-Mercury, LLC*, 2024 U.S. Dist. LEXIS 2943, at *13 (S.D.N.Y. Jan. 5,

2024). While a circuit court can grant the petition for interlocutory appeal, even when the decision does not affect other pending cases, the impact on other pending cases is a factor the court considers. *Cal. Pub. Emps. Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 90 (2d Cir. 2004) (granting interlocutory appeal under 28 U.S.C. §1292(b) where resolution of the controlling question of law would determine whether "scores of pending lawsuits" were properly in federal court); *Glatt v. Fox Searchlight Pictures Inc.*, 2013 U.S. Dist. LEXIS 139594, at *5 (S.D.N.Y. Sept. 17, 2013) ("the impact that an appeal will have on other cases is a factor that we may take into account" in deciding the issue") (quoting *Klinghoffer*, 921 F.2d at 24).

This Court should exercise its discretion to grant this Petition, because the controlling question of law presented here also affects many *other* pending federal district cases involving the same threshold issue. Indeed, *Vega* gave birth to a cottage industry of "pay frequency" litigation, with attorneys seeking to cash-in on the *Vega* decision. *See* Clukey, *supra* (noting "attorneys are advertising online to get workers interested in filing class action lawsuits" and more than 400 pay frequency lawsuits have been filed since *Vega*). Thus, granting this Petition will conserve judicial resources, as district court judges will avoid spending resources ruling on

21

motions to dismiss;[9] holding discovery conferences and hearings related motions; and overseeing dispositive motion practice (including summary judgment motions on the underlying issue of whether these workers are even "manual workers").[10] The litigants in these cases will also avoid spending thousands of hours (and millions of dollars) litigating.

## V.     Additional Grounds Exist Warranting This Court's Exercise of Its Discretion: The Order Involves a Novel Question of Law Where Plaintiffs are Seeking Exponential Damages and, Thus, the Appeal Involves an Issue of Statewide Importance

The conditions for an interlocutory appeal under 28 U.S.C. §1292(b) are more likely satisfied, and the circuit court more likely to grant the petition, where the order subject to review "involves a new legal question or is of special consequence." *Mohawk Indus.*, 558 U.S. at 111 (2009). In addition to satisfying the statutory criteria authorizing interlocutory review, this Court should grant the Petition, because the case is exceptional,

---

[9] These are just a few of the cases where motions to dismiss are pending: *Bryant v. Buffalo Exch., Ltd.*, No. 23-CV-08286, ECF No. 30 (S.D.N.Y. filed Feb. 20, 2024); *Campbell v. Zerocater, Inc.*, No. 23-CV-05742, ECF No. 29 (S.D.N.Y. filed June 6, 2024); *Charles v. United States of Artizia Inc.*, No. 23-CV-09389, ECF No. 15 (S.D.N.Y. filed Feb. 1, 2024); *Confusione v. Autozoners, LLC*, No. 21-CV-00001, ECF No. 64 (E.D.N.Y. filed July 3, 2024). Presumably, if the motion to dismiss is denied, they too will move for interlocutory review, and thus, this Court will be asked to step in, repeatedly.

[10] Defendant denies Plaintiff and those he seeks to represent are "manual workers," a term that is ambiguously defined as a "mechanic, workingman or laborer." NYLL §190.

involving a novel legal issue that poses significant impact on employers and employees in the state. This issue has been widely discussed in the legal press,[11] the mainstream press,[12] and has even caught the ire of the Governor of New York, who in January 2024 introduced legislation to nullify *Vega*.[13] Several bills have been introduced by the Legislature,[14] as well, to nullify *Vega*'s holding. Not surprisingly, Newsday reported the "trial attorneys" blocked the Governor's efforts. Clukey, *supra*.

## CONCLUSION

The current state of the law is untenable. An employer in New York is subject to lawsuits (or not) seeking business-ending damages depending on where they are located and in which court they are sued (First Department or Second Department). If the employer is sued in federal court, it does not matter in which federal court the case is filed, as a federal

---

[11] Allen A. Shoikhetbrod & Jared Cook, *New York Court Ruling Holds No Private Right of Action for Pay Frequency Claims*, N.Y.L.J., Feb. 23, 2024; Evan M. Piercey & Michael S. Arnold, *New York Court Puts Breaks on Manual Worker Weekly Wage Payment Claims*, Nat'l L. Rev., Jan. 23, 2024.

[12] Clukey, *supra*; Nicole Gelinas, *Lunatic Pay Law Threatens NY Biz*, N.Y. Post, Mar. 20, 2023.

[13] *See FY 2025 New York State Executive Budget*, Education, Labor and Family Assistance Article VII Legislation Memorandum in Support 15, https://www.budget.ny.gov/pubs/archive/fy25/ex/artvii/elfa-memo.pdf (last visited August 5, 2024).

[14] *See, e.g.*, S. 09811, Gen. Assemb. (N.Y. May 31, 2024).

court geographically located in the Second Department is not required to follow Second Department precedent but must "predict" how the NYCOA will rule. So, whether the employer must defend a lawsuit seeking staggering damages, potentially resulting in bankruptcy (and the loss of jobs for all the employees who work there), depends on what "prediction" the particular federal judge assigned to the case makes. Such haphazard application of the law undermines the public's trust in the judiciary.

Few employers will take the chance and wait for a final judgment, and instead, will succumb to the enormous pressure to settle that class actions impose. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) (noting "coercion is especially pronounced in class actions" leading to "blackmail settlements"); Clukey, *supra* (describing owners of a Dairy Queen who settled a weekly payment lawsuit for $450,000, rather than face a lawsuit seeking "millions" and had to cash out their retirement funds to make the first $75,000 payment, with payments continuing for two more years). Appellate review is sorely needed.

Respectfully, the Petition should be granted.

Dated:  August 5, 2024

Jackson Lewis P.C.

 /s/ Jeffrey W. Brecher
_____
Jeffrey W. Brecher
Elyse Patterson
58 S. Service Road, Suite 250
Melville, NY  11747
(631) 247-0404
Jeffrey.Brecher@jacksonlewis.com

*Attorneys for Defendant-Petitioner*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the portions exempted by Fed. R. App. P. 32(f).

[X] this brief contains 5173 words

[  ] this brief uses monospaced type and contains [   ] lines

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using Microsoft word in 14-point Times New Roman font; or

[  ] this brief or other document has been prepared in a monospaced typeface using [  ] or [  ].

Dated:  August 5, 2024

Jackson Lewis P.C.

  /s/ Jeffrey W. Brecher
Jeffrey W. Brecher
Elyse Patterson
58 S. Service Road, Suite 250
Melville, NY  11747
(631) 247-0404
Jeffrey.Brecher@jacksonlewis.com

*Attorneys for Defendant-Petitioner*

26

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | **AFFIDAVIT OF SERVICE** |
| | ) ss.: | **BY E-MAIL** |
| COUNTY OF NEW YORK | ) | |

I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above:

**On August 5, 2024**

deponent served the within: **PETITION FOR PERMISSION TO APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1292(b) AND FRAP 5(a)(3)**

**upon:**

**Brian Scott Schaffer (bschaffer@fslawfirm.com)**
**Frank Joseph Mazzaferro (fmazzaferro@fslawfirm.com)**
**Fitapelli & Schaffer LLP**
**28 Liberty Street, 30th Floor**
**New York, NY 10005**
**212-300-0375**
**Fax: 212-481-1333**

**Raymond Nardo (nardo@raynardo.com)**
**129 Third Street**
**Mineola, NY 11501**
**516-248-2121**
**Fax: 516-742-7675**

via email at the email addresses shown by consent of all parties. The party(s) waive service of any hard copies.

I also filed the electronic copy of the foregoing document via e-mail to the Court's email address (newcases@ca2.uscourts.gov), and four hard copies of the foregoing documents were sent to the Clerk's Office by Federal Express – Overnight Mail.

**Sworn to before me on August 5, 2024**

**/s/ Mariana Braylovskiy**
**Mariana Braylovskiy**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026

**Tyrone Heath**

**Job #   331689**